# IN THE COURT OF APPEALS OF TENNESSEE
## AT JACKSON

## COLETTE SUZANNE TURMAN v. FRED TURMAN

### Appeal from the Chancery Court for Henry County
### No. 20745    Ron E. Harmon, Judge

### No. W2013-01938-COA-R3-CV - Filed March 6, 2014

Because the order appealed is not a final judgment, we dismiss this appeal for lack of jurisdiction.

### Tenn. R. App. P. 3 Appeal as of Right; Appeal Dismissed

HOLLY M. KIRBY, J., ALAN E. HIGHERS, P.J.W.S., AND J. STEVEN STAFFORD, J.

W. Brown Hawley and George Robert Whitfield, III, Paris, Tennessee, for the appellant, Colette Suzanne Turman

Donald N. Capparella and Elizabeth Noel Sitgreaves, Nashville, Tennessee, for the appellee, Fred Turman

### MEMORANDUM OPINION[1]

Pursuant to the mandates of Rule 13(b) of the Tennessee Rules of Appellate Procedure, we have reviewed the appellate record to determine if the Court has subject matter jurisdiction to hear this matter. After this review, it appears to the Court that it does not have jurisdiction, because the trial court did not adjudicate all the claims of the parties. Moreover,

---

[1]Rule 10 of the Rules of the Court of Appeals of Tennessee provides:

> This Court, with the concurrence of all judges participating in the case, may affirm, reverse or modify the actions of the trial court by memorandum opinion when a formal opinion would have no precedential value. When a case is decided by memorandum opinion it shall be designated "MEMORANDUM OPINION", shall not be published, and shall not be cited or relied on for any reason in any unrelated case.

because of the trial court failed to make certain conclusions of law, this Court is unable to determine whether certain claims were indeed adjudicated.

In this divorce matter, Appellant Colette Suzanne Turman ("Wife") filed a complaint for divorce on March 18, 2008, alleging only irreconcilable differences as the ground for divorce. Wife filed a motion on May 8, 2008, seeking pendent lite support, as well as permission to amend her complaint to assert fault-based grounds for divorce. Appellee Fred Turman ("Husband") filed an answer and counter-claim for divorce on May 9, 2008. In his counter-claim, Husband requested, among other things, alimony *in futuro*, alimony *in solido*, temporary alimony, rehabilitative alimony and permanent alimony.

The trial court entered an order on August 8, 2008, which recites that the parties were in agreement concerning: 1) ongoing division of the parties' income from their rental property and Morgan-Keegan Investment Fund; 2) retention of an accounting firm to collect the parties' business income, pay business expenses and divide the income equally; 3) the disposition of sale proceeds from the parties' automobile business; and, 4) division of a check issued in the names of both parties paid as a result of a personal injury.

On September 17, 2008, Wife filed a motion alleging that Husband was in contempt of the trial court's order of August 8, 2008, and asked that the trial court hold Husband in contempt and require Husband to immediately purge himself of contempt. Wife also requested an award of attorney fees and again requested permission to amend her complaint to include the grounds of inappropriate marital conduct.

The parties' litigation continued and on October 14, 2008, Wife filed an Amendment to Original Complaint wherein she asserted inappropriate marital conduct as a ground for divorce.[2] Moreover, Wife included a new claim for periodic and/or rehabilitative alimony. As the litigation continued, the parties sold at auction a complex of apartments known as the "Clayton Apartments" and a rental house in Paris. Husband was the high bidder on the parties' marital home. The parties also sold a significant portion of their personal property at auction. The trial court entered an agreed order on May 10, 2010, which recited that the Greer & Greer Law Firm was holding $719,452.32 resulting from the auction of the "Clayton Apartments" and $65,006.56 resulting from the sale of the rental property. From the sums, the law firm was to pay to the Clerk and Master the amount of $150,000.00 for the Clerk and Master to invest in two separate short-term interest bearing accounts with $75,000.00 being deposited in such an account for the Wife and $75,000.00 being deposited in such an account for Husband. From the remaining funds held by the law firm, the parties were to divide the balance conditioned into two equal amounts to be paid to each party. The order also

---

[2] The appellate record does not contain an order permitting the amendment.

provided that, from the part due Husband, the law firm would deduct and pay Wife the amount of $91,552.60 representing her share of the net proceeds resulting from Husband's purchase of the matrimonial residence.

The trial court entered an order on October 18, 2010, appointing Mary G. Burns, Clerk and Master, as "Special Master" to meet with the parties, accept documentation from them, interview witnesses, etc., and then report to the Court her findings of the issues presented to her by the parties through their counsel. Wife filed a pleading styled "Plaintiff/Counter-Defendant's Issues Proposed for the Special Master" on November 15, 2010, wherein she submitted the following issues:

> 1. What, if any, office furniture that was not sold at the Doug Taylor auction has not yet been divided by agreement between the parties? Who has possession of the specific items or what disposition occurred of any item other than through the auction?
>
> 2. What items of marital property (tools, business inventory, etc.) other than the office furnishings previously addressed were not sold in the Doug Taylor auction, which party has possession of or control of the unsold items, or by whom and how the property may have been disposed of, along with how the proceeds were used (to benefit the individual or the martial estate)?
>
> 3. After this case was commenced on March 18,2008, the amount of money, if any, that has been used from marital funds (the business funds or other marital funds) by either party for his or her personal benefit?
>
> 4. Any other disposition by a party not otherwise or previously addressed of an asset that would have been deemed a "marital asset" for division in this divorce action.
>
> 5. Payments on debts which existed prior to separation by either party since this action was initiated on March 1, 2008?

On November 18, 2010, Husband filed a pleading styled "Defendant's Issues Presented to the Special Master," submitting the following issues for the Special Master's consideration:

> 1. Husband received a settlement in his personal injury suit. The suit was based on injuries sustained by Husband as a result of the defendant's dispensing to him the wrong prescription medicine for 10 months. Colette Suzanne Turman, hereinafter referred to as Wife, took $38,104.11, being approximately one-half of the remaining balance of this settlement when she

left Husband. Husband's injuries have left him disabled and impaired his ability to earn a living. Exhibit A is a letter from his physician concerning his medical condition.

**ISSUES**: Is Wife entitled to any part of Husband's personal injury award? Is Husband entitled to alimony in light of his medical impairment?

2. Wife has withdrawn $25,000.00 from the Morgan Keegan account by forging Husband's name on the check. The Morgan Keegan Account was inherited from Husband's mother and was put into a joint account by the parties. Exhibit B is a copy of the forged check referenced above. Exhibit C is an account statement as of November 12, 2010 showing the balance.

**ISSUES**: Is the Morgan Keegan Account Husband's individual property? Is Husband entitled to recover the $25,000.00 withdrawn by Wife from this account?

3. Husband inherited the following property from his mother:

> a. 52 Bethany Street, Jackson sold in 2005 for $165,000. This property was sold on contract and Husband used the payments to invest in the Clayton Apartments and other property. The sales contract and HUD statement can be produced if requested.

> b. Paul Mundt sales contract was paid off November 2009. The payment on this contract of approximately $2,400.00 a month was deposited in the rental account for the Clayton Apartments. The contract was only in Husband's name. Beginning in 2005, the parties lived off the payments until the contract was paid off.

> c. Memphis Cemetery lots - these four lots are in Husband's name.

> d. Jackson Cemetery lot - this one lot is near Husband's parents and is in his name.

**ISSUES**: Should Husband have credit for the above properties and payment? Should Husband have the cemetery lots as his sole and separate property?

4. Husband inherited household goods and furnishings and his mother's jewelry which is in Wife's possession.

**ISSUES**: Should Husband be awarded all these household goods and furnishings and his mother's jewelry?

5. Husband's parents made the following gifts to Husband:

> a. $3,500.00 as a down payment on the Belmont duplex which was sold in the auction when he bought the property in 1983.

> b. Aluminum car hauler. This hauler is solely in Husband's name. A copy of the title is attached as Exhibit D. Husband's mother paid for this hauler out of her check book and put it in Husband's name.

> c. $30,000.00 to pay off Husband's house after it was put in Husband and Wife's name.

> d. Paid for the construction of the 45' x 45' garage on the house property.

> e. $35,000.00 to buy a business known as Trophy Express which was later sold and the proceeds used to pay two years payments on the note secured by the Clayton Apartments and to payoff the car lot floor plan.

> f. A large set of Craftsman tools.

**ISSUE**: Is Husband entitled to the above gifts that have not been sold and to credit in the property distribution for the value of the above gifts from his parents?

6. The Parties' household goods and furnishings have been settled.

7. Husband and Wife each have life insurance policies with cash values.

8. The parties held an auction of all real estate and much personal property. A part of the proceeds have been paid to the parties and the remainder is in escrow.

**ISSUE**: To how much of the auction proceeds is each party entitled in light of the other issues raised and pending?

9. Wife withdrew $4,000.00 in May 2008 and $970.00 in July 2010 out of the rental account for no stated reason.

**ISSUE**: Is Husband entitled to credit for this withdrawal?

10. Wife has not paid her part of the prorated real estate taxes on the Browning Drive property as a result of an error by the title company at closing.

**ISSUE**: Is Husband entitled to recover a proration of these taxes?

11. Husband has paid Wife's Discover card bill which is in his name since the time of their separation in the amount of $2,141.96.

**ISSUE**: Is Husband entitled to be reimbursed for these payments?

12. Husband paid over $1,000.00 for repairs to the properties in preparation for the auction.

**ISSUE**: Is Husband entitled to be reimbursed for these expenses?

The Clerk and Master filed a report styled "Master's Report 2nd Revised" on October 17, 2012.[3] In the report, the Clerk and Master made detailed factual findings regarding each issue presented and attached documentation provided by the parties or otherwise cited to the parties' statements or agreements to support each finding. For each disputed issue, however, the Special Master stated that the trial court would make the legal conclusion regarding the issue.

The trial court entered a decree granting an absolute divorce to the parties on March 18, 2013, but reserved all other issues. On July 25, 2013, the trial court entered an order which purported to resolve all outstanding issues of the parties. The order specifically adopted the Special Master's report and then awarded the Special Master a fee to be taxed as a cost. The trial court further ordered that Wife would have as her sole and separate property, in addition to all sums previously paid to her, the following:

---

[3]The appellate record does not contain any other document which appears to be a report of the Special Master.

a. All personal property currently in her possession except for Husband's Mother's jewelry;

b. One-half of the combined cash value of the parties' Guardian life insurance policies on their lives, i.e., the amount of $3,543.65;

c. $135,000.00 plus the $3,543.65 ordered to equalize the cash values of the respective life insurance policies to be paid from the funds held in the registry of the trial court;

Additionally, the trial court ordered the Clerk and Master to deduct from the payment to Wife one-half of the court costs and $1,000.00 as one-half of the Special Master's fee.

The trial court further ordered that Husband would have as his sole and separate property, in addition to all sums previously paid to him, the following:

a. The aluminum car hauler;
b. His mother's jewelry which will be promptly returned to him by Plaintiff;
c. All personal property currently in his possession;
d. The cash value of the Guardian life insurance policy on Husband's life.
e. All funds held in the Morgan Keegan Account with a then-current value of $169,188.82;
f. $12,246.79 as the balance of the funds held in the registry of the trial court less the other payments set forth in the trial court's order, less one-half the court costs in this cause and $1,000.00 as one-half of the Special Master's fee.

The trial court further authorized the transfer of the Morgan Keegan account from the joint names of the parties to Husband, individually, as sole owner and to stop all further disbursements to Wife. The trial court also noted that the parties had previously divided their household goods and furnishings in a manner satisfactory to them, and therefore the trial court ordered each party to keep in his or her possession all personal property currently in his or her possession not otherwise specifically awarded by the trial court. Finally, the trial court ordered that each party would pay his or her own attorney's fees, litigation costs and expenses.

Notably, the trial court did not set forth conclusions of law, either separately or in the order itself. There is nothing in the order determining whether the parties' assets were separate property or marital property before the trial court's division of the property between the parties. Consequently, there is nothing specifying the basis upon which it awarded Wife the sum of $135,000.00. The order is silent regarding set-off or credit for payment of debts

existing prior to the parties' separation, division of Husband's personal injury award, the allegation that Wife forged Husband's name to withdraw funds from the Morgan-Keegan account, the extent to which the assets were Husband's separate property due to gifts from his parents and inheritance from his mother, the allegation that Wife withdrew cash from the parties' rental account for no stated reason, and whether Husband was entitled to recover a proration of taxes unpaid by Wife.

Moreover, the trial court did not adjudicate the following claims: 1) alimony sought by both Wife and Husband; 2) the request for a finding of contempt as set forth in Wife's motion filed on September 17, 2008; and, 3) ownership of the cemetery lots.

Rule 3 of the Tennessee Rules of Appellate Procedure provides that if multiple parties or multiple claims are involved in an action, any order that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties is not final or appealable. Except where otherwise provided, this Court only has subject matter jurisdiction over final orders. *See Bayberry Assoc. v. Jones*, 783 S.W.2d 553 (Tenn. 1990). Clearly, the order appealed in this matter is not a final judgment and this Court does not have jurisdiction of this matter. Typically, when the Court encounters a matter lacking a final judgment, the Court permits the appellant a period of time to obtain entry of a final judgment or else show cause why the appeal should not be dismissed for lack of a final judgment. In this matter, though, it does not appear that such a course of action could take place in a relatively short period of time.

Upon remand, this matter will require adjudication of the remaining claims, as well as further findings of fact and conclusions of law. Rule 52.01 of the Tennessee Rules of Civil Procedure provides in pertinent part "[i]n all actions tried upon the facts without a jury, the court shall find the facts specially and shall state separately its conclusions of law and direct the entry of the appropriate judgment." T.R.C.P. 52.01. In the absence of complete findings of fact and conclusions of law, we are unable to review the trial court's decision in this matter effectively. *See Turner v. Gaviria*, No. W2013-01944-COA-R3-CV, 2014 WL 426663, at *2 (Tenn. Ct. App. Feb. 3, 2014); *Bell v. Trull*, No. W2013–00398–COA–R3–CV, 2013 WL 5447289, at *3 (Tenn. Ct. App. Sept. 30, 2013).

The Court takes judicial notice that the trial court, The Honorable Chancellor Ron E. Harmon, passed away on September 14, 2013. Consequently, complete adjudication of this matter will require that a different judge consider this matter. We are of the opinion that the interests of justice require that we dismiss this appeal for lack of jurisdiction and remand to the trial court for further proceedings.

## CONCLUSION

Because the trial court has not yet entered a final judgment, the appeal is dismissed without prejudice and the case remanded to the trial court for further proceedings consistent with this Opinion. Should a new appeal be filed, the Clerk of this Court shall, upon request of either party, consolidate the record in this appeal with the record filed in the new appeal. Costs of this appeal are taxed to the appellant, Colette Suzanne Turman and her surety, for which execution may issue if necessary.

**PER CURIAM**